OPINION
{¶ 1} Defendant-appellant Eric Wisdom appeals from the April 15, 2004, finding of delinquency on one count of gross sexual imposition (F4) and one count of disorderly conduct and the May 13, 2004, disposition. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} This appeal arises from four cases in the trial court. On December 16, 2003, the State filed a delinquency complaint against appellant alleging that appellant had committed domestic violence by hitting his mother in the chest and striking her in the face.[1] On December 18, 2003, a complaint was filed in which it was alleged that appellant was delinquent in that he had left home without permission while on house arrest, in violation of a prior court order.[2] While those cases were pending, an additional delinquency complaint was filed on February 4, 2004.[3] In that complaint, it was alleged that appellant had committed gross sexual imposition by having sexual contact with another. Specifically, the complaint alleged that appellant "did force the victim inside Timken High School, did hold her against her will, did touch her breast and buttocks by force and did attempt to kiss her." Thereafter, on March 26, 2004, a delinquency complaint was filed alleging that appellant was delinquent in that he had violated a prior court order when appellant had been suspended from school and had violated the good behavior in home, school and community order.[4] That same day, March 26, 2004, a warrant was issued ordering that appellant be arrested and detained in the Juvenile Attention Center, without bond.
 {¶ 3} The cases proceeded while appellant was held at the Juvenile Attention Center. Ultimately, all of the cases came before a Magistrate for a consolidated trial on April 13, 2004. At that time, the State made several motions to the court as part of a plea agreement. Specifically, the State made a motion to dismiss the two counts of violating prior court orders and a motion to reduce the count of domestic violence to disorderly conduct. In addition, as to the count of gross sexual imposition, the State moved to amend the language of the complaint to delete the word "breast" and in its place, insert the words "chin and face."
 {¶ 4} Prior to accepting appellant's change of plea, the trial court addressed appellant personally and a colloquy ensued. In addition, appellant's trial counsel stated that he had discussed appellant's Juv. R. 29 rights with appellant and that counsel and appellant had spoken about appellant's actions and the criminal violations the actions constituted.
 {¶ 5} Ultimately, the trial court accepted appellant's plea of true to the charges of gross sexual imposition and disorderly conduct. The trial court then found that appellant was delinquent by virtue of those two offenses. Disposition was continued pending psychological evaluation and risk assessment. Following a recommendation of the pre-trial release program representative, the Magistrate ordered that appellant remain in the Juvenile Attention Center.
 {¶ 6} A dispositional hearing was held on May 13, 2004. At that hearing, the State sought to have appellant committed to either the Community Correction Facility (CCF) or the Ohio Department of Youth Services (DYS). The State pointed out that appellant was 17 years of age and would turn 18 in January. The State argued that appellant had engaged in a series of offenses and had been a problem everywhere he had been placed. The State asserted that appellant had denied any inappropriateness in regard to his behavior which had constituted the offense of gross sexual imposition. Instead, appellant considered it aggressive flirting. In addition, the State contended that placement with appellant's mother was inappropriate because the mother minimized appellant's problems and enabled him.
 {¶ 7} Others spoke to the Court concerning appellant and disposition. Kevin Mears, of the probation office, told the court that he agreed with the State's recommendation. Mr. Mears stated that counseling has not helped enough and that DYS was the appropriate place for appellant and possibly CCF. Mr. Mears stated that at DYS, appellant could get anger management counseling.
 {¶ 8} Abby Leonard, of the pre-trial release office, also spoke at the hearing. Ms. Leonard stated that she had worked with appellant for quite some time. Ms. Leonard told the court that there were concerns about appellant's behavior toward a female teacher at the Passages school he had attended. Appellant had been disrespectful to the teacher and the teacher felt that appellant had invaded her personal space. Ms. Leonard believed that this problem with disrespect and invasion of personal space had occurred on four different occasions. When appellant, appellant's mother and Ms. Leonard met to discuss this behavior, appellant was not cooperative. In fact, the same day that they met, appellant left the school and said he was not going to return. From her personal experience with appellant, Ms. Leonard described appellant as very polite as long as things were going his way. However, when things were not going his way, appellant wanted to be manipulative and, ultimately, would become totally disrespectful when he could not get what he wanted. Ms. Leonard thought that appellant's mother may be having a hard time understanding what is going on with appellant and may be somewhat enabling.
 {¶ 9} Appellant's counsel argued that DYS was not appropriate and that appellant should be placed on probation. Counsel reminded the Court that this was appellant's first juvenile disposition and contended that the State was "over blowing" appellant's behavior. Counsel admitted that appellant had anger management problems, behavior problems, was disrespectful and needed to suffer consequences. However, counsel pointed out that appellant had been at the Juvenile Attention Center for 45 days and his behavior had improved. While counsel acknowledged that there had been an incident at the Juvenile Attention Center involving appellant just the day before the hearing, counsel pointed out that this was the only incident in the 45 days appellant had been held there. Counsel also informed the court that MST was willing to take appellant.
 {¶ 10} Appellant's mother also spoke to the court. She stated that she had seen a difference in appellant since he had spent 45 days at the Juvenile Attention Center. She acknowledged that appellant has an anger management problem but claimed that she and appellant had spoken and that appellant now understood what happened and how he had violated the victim.[5] Appellant's mother stated that appellant had accepted responsibility for his actions. She asked the court to allow him to return home for a second chance.
 {¶ 11} Appellant addressed the court as well. Appellant stated that he wanted to apologize to the victim. He stated that he was sorry for what he did and that he now realized the seriousness of his actions.
 {¶ 12} The Magistrate then orally recommended that appellant receive an indefinite commitment to the Ohio Department of Youth Services with a minimum of a six month commitment. That commitment was to be suspended but appellant was to be placed at the Community Corrections Facility (CCF). Transcript of Disposition Hearing, pg. 25. That same day, May 13, 2004, the trial court entered a Judgment Entry which imposed the following disposition: "Indefinite commitment to ODYS — 6 month minimum — suspended. Remand to Attention Center pending placement at the Community Corrections Facility (CCF)."[6]
 {¶ 13} On June 11, 2004, appellant filed a motion for a stay pending appeal. The trial court denied the motion that same day.
 {¶ 14} It is from the April 15, 2004, adjudication and the May 13, 2004, disposition that appellant appeals, raising the following assignments of error:
 {¶ 15} "I. The trial court abused its discretion by imposing on appellant an indefinite sentence to the ohio department of youth services.
 {¶ 16} "II. The trial court did not sufficiently advise appellant of his rights prior to accepting his plea.
 I {¶ 17} In the first assignment of error, appellant contends that the trial court abused its discretion when it imposed an indefinite commitment to DYS. We disagree.
 {¶ 18} "Ohio has long recognized that juvenile proceedings are not criminal in nature and the juvenile system must focus on the child's welfare." State v. Penrod (1989), 62 Ohio App.3d 720, 722,577 N.E.2d 424. Nonetheless, the order of disposition in a juvenile case is a matter within the court's discretion. State v. Reinier (June 1, 1999), Stark App. No. 1998CA00298.
 {¶ 19} In this case, appellant was found delinquent for committing a fourth degree felony (gross sexual imposition) as well as a misdemeanor (disorderly conduct). Revised Code 2152.16 reads in pertinent part as follows:
 {¶ 20} "(A)(1) If a child is adjudicated a delinquent child for committing an act that would be a felony if committed by an adult, the juvenile court may commit the child to the legal custody of the department of youth services for secure confinement as follows:
 . . . {¶ 21} "(e) For committing an act that would be a felony of the third, fourth, or fifth degree if committed by an adult or for a violation of division (A) of section 2923.211 of the Revised Code, for an indefinite term consisting of a minimum period of six months and a maximum period not to exceed the child's attainment of twenty-one years of age." (Emphasis added.)
 {¶ 22} In his merit brief, appellant has pointed out that he had no previous dispositions and had responded positively to his time at the Attention Center while awaiting disposition. In addition, appellant argues that he has taken responsibility for his actions and expressed remorse. However, upon review we find no abuse of discretion by the trial court. The State asserted that appellant had denied any inappropriate behavior regarding the offense of gross sexual imposition. In addition, there was testimony that appellant had been disrespectful to a teacher and invaded her personal space on more than one occasion and that appellant was uncooperative when Ms. Leonard from pre-trial release tried to talk to him about this. Mr. Mears, of the probation office, recommended that appellant be committed to DYS and possibly CCF. While appellant did express remorse and claim that he now understood the seriousness of his actions, appellant failed to make these statements until disposition. When this is viewed in light of Ms. Leonard's description of appellant as manipulative when things were not going his way, a question arises as to whether appellant's remorse is genuine.
 {¶ 23} In light of all of the facts and circumstances, we find no abuse of discretion by the trial court.
 {¶ 24} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 25} In the second assignment of error, appellant argues that the trial court did not sufficiently advise appellant of his rights prior to accepting his plea of true. Specifically, appellant contends that the trial court failed to advise appellant of the possible penalty on the charge of disorderly conduct. We find no reversible error.
 {¶ 26} In accepting an admission from a juvenile, the court is required to personally address the juvenile and conduct an on-the-record discussion to determine whether the admission is being made voluntarily and with an understanding of the nature of the allegations and the possible consequences of the admission. Juv.R. 29(D)(1); In re McKenzie
(1995), 102 Ohio App.3d 275, 277, 656 N.E.2d 1377. "[T]he applicable standard for the trial court's acceptance of an admission is substantial compliance with the provisions of Juv.R. 29(D). . . ." In re ChristopherR. (1995), 101 Ohio App.3d 245, 248, 655 N.E.2d 280 (quoting In reMeyer (Jan. 15, 1992), Hamilton App. No. C-910292. Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea. In re Palmer
(Nov. 21, 1996), Franklin App. No. 96APF03-281 (quoting State v. Nero
(1990), 56 Ohio St.3d 106, 564 N.E.2d 474). If there is substantial compliance, a court may conclude the plea was voluntary absent a showing of prejudice. In re West (1998), 128 Ohio App.3d 356, 714 N.E.2d 988. The test for prejudice is whether the plea would have otherwise been made. In re Dillard, Stark App. No. 2001CA00121, 2001-Ohio-1897 (citingState v. Stewart (1977), 51 Ohio St.2d 86, 364 N.E.2d 1163.
 {¶ 27} It is clear, as is conceded by appellant, that appellant was informed of the more severe "consequence" of an admission to the charge of gross sexual imposition, i.e., that he could be committed to the legal custody of DYS until he reached the age of twenty-one. R.C.2152.16(A)(1)(e). Appellant stated that he understood the maximum penalty. Further, appellant entered this admission as a result of a plea agreement in which two counts of violating past orders were dismissed, and a count of domestic violence was reduced to disorderly conduct. Under such circumstances, this court finds that the trial court substantially complied with Juv. R. 29(D). Admittedly, the trial court failed to inform appellant of the much less serious penalties for disorderly conduct. However, appellant understood the most severe penalty he faced and there is no indication whatsoever that appellant was prejudiced by the trial court's failure to inform appellant of the penalties for disorderly conduct. As such, we find substantial compliance and no prejudice.
 {¶ 28} Appellant's second assignment of error is overruled.
 {¶ 29} The judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] This case was assigned case number 129648.
[2] This case was assigned case number 129701.
[3] This case was assigned case number 130283.
[4] This case was assigned case number 130970.
[5] Appellant's mother works at the local Rape Crisis Center as a volunteer.
[6] The trial court further ordered that a registration hearing be scheduled prior to appellant's discharge from CCF.